IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ELVIS TOLBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: |
| | ) 3:05cv1149-MHT |
| | ) |
| BRIGGS AND STRATTON CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT BRIGGS AND STRATTON CORPORATION'S
MOTION TO STRIKE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES**[1]

Plaintiff Elvis Tolbert ("plaintiff") filed this lawsuit against defendant Briggs & Stratton Corporation ("Briggs" or "defendant"), alleging that Briggs discriminated against him on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, and plaintiff makes a claim of intentional infliction of emotional distress against defendant. Defendant moves the Court to strike plaintiff's claim for punitive damages and provides the following in support of this Motion:

---

[1] This Motion is filed in the alternative that the Court denies defendant's Motion for Summary Judgment as to plaintiff's claims of race discrimination under Title VII of the Civil Rights Act of 1964, as amended, and intentional infliction of emotional distress.

68148.1

## Background Facts[2]

Briggs is a manufacturer of small gas-powered engines. (Exhibit 4, Beasley Decl. ¶ 1). Briggs' corporate office is located in Milwaukee, Wisconsin, but it has eight (8) plants located throughout the United States. (Exhibit 4, Beasley Decl. ¶ 1). Briggs also has international plants located in China and the Czech Republic. (Exhibit 4, Beasley Decl. ¶ 1). Finally, Briggs has more than 6,000 employees, which include an international sales force that works in various parts of the world. (Exhibit 4, Beasley Decl. ¶ 1).

Since 2000, Harold Smith has been the Manager of the Briggs & Stratton plant in Auburn, Alabama. (Exhibit 2, Smith Depo. p. 16:2-8). Mr. Smith is responsible only for the Auburn plant. (Exhibit 2, Smith Depo. P. 16:2-8). There are three (3) general areas in the Auburn plant: (1) Iron Machining, (2) Aluminum Machining and (3) Assembly. (Exhibit 4, Beasley Decl. ¶ 2). Each of these areas is supervised by an Area Manager, who reports to Mr. Smith. (Exhibit 2, Smith Depo. pp. 16:18-18:9). Also within these areas are coaches (also known as "Team Leaders"), who report to the Area Managers. (Exhibit 2, Smith Depo. pp. 17:6-17). Beginning in March of 2004, Robert Westphal was the Area Manager over Iron Machining, and plaintiff was one of his coaches. (Exhibit 4, Beasley Decl. ¶ 3; Exhibit 5, Westphal Decl. ¶ 1).

---

[2] Exhibits to this Motion are referenced as they appear in Defendant's Brief in Support of Summary Judgment Motion.

In accordance with its Business Integrity Policy, Briggs is committed to conducting business in full compliance with the law and without regard to race, color, religion, sex, age, national origin, disability, veteran status or other protected classification. (Exhibit 4, Beasley Decl. ¶ 10). As part of Briggs' Integrity Policy, employees are given an 800 number to which an employee can call and make complaints, if that employee is not comfortable making such complaints to someone at the plant. (Exhibit 4, Beasley Decl. ¶ 10). During new hire orientation, employees are given a copy of Briggs' Business Integrity Policy and thoroughly trained on the same. (Exhibit 4, Beasley Decl. ¶ 10). Additionally, Briggs displays its Equal Employment Opportunity poster in its break rooms. (Exhibit 1, Pl. Depo. pp. 60:19-61:3; Exhibit 4, Beasley Decl. ¶ 10). As supervisory employees, Mr. Smith, Mr. Westphal, Douglass Glass (Area Manager), John Frantz (Area Manager), Tim Beasley (Human Resources Manager)[3] and plaintiff received annual EEO compliance training as well as Briggs' Integrity Policy, which contains its Equal Employment Opportunity and Prohibition Against Harassment policies. (Exhibit 4, Beasley Decl. ¶ 10).

On December 10, 2004, plaintiff was discharged for poor performance. (Exhibit 1, Pl. Depo. pp. 110:4-10, 114:12-117:19; Exhibit 4, Beasley Decl. ¶ 5).

---

[3] In his deposition, plaintiff implied that Mr. Smith, Mr. Westphal, Mr. Glass, Mr. Frantz, and Mr. Beasley did not treat him fairly during his employment with Briggs. (Exhibit 1, Pl. Depo. pp. 49:21-54:21, 62:19-64:16, 83:9-86:14, 139:16-140:3).

68148.1

Plaintiff subsequently filed this action, alleging that, because of his race, defendant discriminated against him in compensation, assignments, promotions, termination and terms and conditions of employment.  Plaintiff also made a claim of intentional infliction of emotional distress against defendant.

## Legal Standards

While a plaintiff may recover punitive damages in intentional discrimination cases, such damages "are disfavored by the law and are awarded solely to punish defendants and [to] deter future wrongdoing." Ferrill v. The Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999) (quoting Walters v. City of Atlanta, 803 F.2d 1135, 1147 (11th Cir. 1986)).  Punitive damages are limited to a subset of intentional discrimination cases, that is, those where the plaintiff demonstrates that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights" of the plaintiff.  42 U.S.C. §§ 1981a(a)(1), 1981a(b)(1); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1280 (11th Cir. 2002) (noting that to recover punitive damages, "the plaintiff must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to his federally protected rights") (citing Kolstad v. American Dental Ass'n., 527 U.S. 526, 536-37 (1999)). "The terms 'malice' and 'reckless' ultimately focus on the actor's state of mind." Kolstad, 527 U.S. at 534-35.  These terms "pertain to the employer's

knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. at 535. "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." Miller, 277 F.3d at 1280 (citing Kolstad, 527 U.S. at 536).

However, the analysis does not necessarily end with the showing of malice or reckless indifference by an individual. Rather, the plaintiff must impute liability for punitive damages to the employer. Kolstad, 527 U.S. at 539. To recover punitive damages, plaintiff must show "(1) that the employer acted with malice or reckless indifference . . .; (2) that the employee causing or permitting the unlawful discrimination works in a 'managerial capacity'; (3) that the managerial employee was 'acting within the scope of employment'; and (4) that the managerial employee's unlawful discrimination is not 'contrary to the employer's good-faith efforts to comply with Title VII.'" Miller v. Kenworth of Dothan, Inc., 82 F. Supp. 2d 1299, 1306 (M.D. Ala. 2000) (quoting Kolstad, 527 U.S. at 542-43) (internal citations omitted).

## Argument

First, plaintiff claims that defendant discriminated against him in compensation, assignments, promotions, termination and terms and conditions of employment because of his race. However, plaintiff has not produced any

68148.1

evidence that his race played any role in any of defendant's actions. As such, there is no evidence that plaintiff was discriminated against because of his race, much less that the alleged discrimination was malicious or intentional.

Second, plaintiff's claim for punitive damages with respect to any alleged discrimination on the parts of Mr. Smith, Mr. Westphal, Mr. Glass, Mr. Frantz or Mr. Beasley fails because he cannot demonstrate that either of these individuals was within his "managerial capacity," as that term has been defined, when he allegedly discriminated against plaintiff. At the time of the alleged discrimination, Mr. Smith was directly responsible for supervising only the Auburn, Alabama plant, which is part of Briggs' worldwide group of plants located throughout the United States, China and the Czech Republic. (Exhibit 2, Smith Depo. P. 16:2-8; Exhibit 4, Beasley Decl. ¶ 1). Mr. Beasley was the Human Resources Manager at the Auburn, Alabama plant, and Mr. Westphal, Mr. Glass and Mr. Frantz were Managers over an area in the Auburn, Alabama plant. The Eleventh Circuit has made it clear that "to get punitive damages, a [] plaintiff must show either that the discriminating employee was high up in the corporate hierarchy or that higher management countenanced or approved his behavior." <u>Dudley v. Wal-Mart Stores, Inc.</u>, 166 F.3d 1317, 1323 (11th Cir. 1999) (internal quotations omitted) (<u>citing</u> <u>Splunge v. Shoney's Inc.</u>, 97 F. 3d 488, 491 (11th Cir. 1996); <u>Reynolds v. CSX</u>

6

68148.1

Transp., Inc., 115 F.3d 860, 869 (11th Cir. 1997), vacated on other grounds, 118 S. Ct. 2364 (1998)).

Clearly, Mr. Smith, Mr. Westphal, Mr. Glass, Mr. Frantz and Mr. Beasley, who had responsibility for a limited number of employees in a single plant in Alabama, in a company that has more than 6,000 employees throughout the world, were not "high up in the corporate hierarchy" and their actions, even if proven to be race-based, cannot be imputed to Briggs for purposes of entitlement to punitive damages.  See Reynolds, 115 F.3d at 869 (holding that first-level supervisor in one office of large corporation not part of higher management for imposition of punitive damages on employer).  As the Supreme Court has held, although the alleged discriminator "perhaps need not be the employer's top management, officers or directors," he nevertheless must be sufficiently high enough in the organization to be "important."  Kolstad, 527 U.S. at 543.

In Dudley, the Eleventh Circuit held that the store manager in one store of a multi-store chain like Wal-Mart does not qualify as sufficiently high enough in the chain of command to be considered higher management for the establishment of punitive damages.  Dudley, 166 F.3d at 1323;[4]  see also Splunge, 97 F. 3d at 491-92 (holding that manager of single restaurant in multi-restaurant chain -- and even

---

[4]  Notably, although Dudley was decided before the Supreme Court's pronouncements regarding punitive damages, the Supreme Court in Kolstad cited Dudley with favor on the issue of establishing limits on vicarious liability for punitive damages.  See Kolstad, 527 U.S. at 541.

7

68148.1

his boss, the area supervisor -- were not high enough in management for their actions to be imputed to the company for purposes of establishing punitive damages). This case is indistinguishable from either <u>Dudley</u> or <u>Splunge</u>. Here, Mr. Smith and Mr. Beasley were responsible only for the limited number of employees in the Auburn plant, while Mr. Westphal, Mr. Glass and Mr. Frantz were responsible only for the limited number of employees within an area of the same plant. Accordingly, plaintiff cannot establish facts sufficient to warrant a claim for punitive damages with respect to any alleged discrimination on the parts of Mr. Smith, Mr. Westphal, Mr. Glass or Mr. Beasley.

Furthermore, the Supreme Court has held that employers may assert a good faith defense to vicarious liability for punitive damages where "employment decisions of managerial agents . . . are contrary to the employer's 'good-faith efforts to comply with [federal anti-discrimination laws].'" <u>Kolstad</u>, 527 U.S. at 545. Clearly, Briggs has made such good faith efforts to comply with the federal anti-discrimination laws. Briggs implements its employment practices without regard to race, color, religion, sex, age, national origin, disability, veteran status or other protected classification. (Exhibit 4, Beasley Decl. ¶ 10).

In addition, Briggs made good faith efforts to comply with the federal anti-discrimination laws by regularly training all of its supervisory employees, including Mr. Smith, Mr. Westphal, Mr. Glass, Mr. Frantz and Mr. Beasley to

abide by federal anti-discrimination laws. (Exhibit 4, Beasley Decl. ¶ 10). Furthermore, during new hire orientation, employees are given a copy of Briggs' Business Integrity Policy, which contains its Equal Employment Opportunity and Prohibition Against Harassment policies. (Exhibit 4, Beasley Decl. ¶ 10). As part of Briggs' Integrity Policy, employees are given an 800 number to which an employee can call and make complaints, if that employee is not comfortable making such complaints to someone at the plant. (Exhibit 4, Beasley Decl. ¶ 10). Additionally, Briggs displays its Equal Employment Opportunity poster in its break rooms. (Exhibit 1, Pl. Depo. pp. 60:19-61:3; Exhibit 4, Beasley Decl. ¶ 10). As such, any alleged discriminatory conduct by Mr. Smith, Mr. Westphal, Mr. Glass, Mr. Frantz and Mr. Beasley, if proven to be true, would be contrary to Briggs' good faith efforts to comply with the federal anti-discrimination laws.

## Conclusion

For all of the reasons discussed herein, plaintiff cannot sustain a claim for punitive damages with respect to his race discrimination or intentional infliction of emotional distress claims, and Briggs respectfully moves the Court to strike his claim for punitive damages.

68148.1

Respectfully submitted,


*s/ Thomas A. Davis*
Thomas A. Davis (ASB-5877-S56T)
E-Mail: tdavis@constangy.com
Tamula R. Yelling (ASB-9447-E61T)
E-Mail: tyelling@constangy.com

*Counsel for Defendant*

**CONSTANGY, BROOKS & SMITH, LLC**
One Federal Place, Suite 900
1819 Fifth Avenue North
Birmingham, Alabama  35203
Telephone:  (205) 252-9321
Facsimile:   (205) 323-7674


## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Juraldine Battle Hodge, Esq.
Law Offices of Juraldine Battle-Hodge, P.C.
207 Montgomery Street, Suite 215
Montgomery, AL  36104
E-Mail: battleb@bellsouth.net



*s/ Thomas A. Davis*
Counsel of Record

68148.1