IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ELVIS TOLBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: |
| | ) 3:05cv1149-MHT |
| | ) |
| BRIGGS AND STRATTON CORPORATION, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF TIM BEASLEY

My name is Tim Beasley. I am the Human Resources Manager at Briggs & Stratton's Auburn, Alabama plant. I am aware of the lawsuit filed by Elvis Tolbert, and this Declaration is based on my personal knowledge.

1. Briggs & Stratton ("Briggs") is a manufacturer of small gas-powered engines. Briggs' corporate office is located in Milwaukee, Wisconsin, but it has eight (8) plants located throughout the United States. Briggs also has international plants located in China and the Czech Republic. Finally, Briggs has more than 6,000 employees, which include an international sales force that works in various parts of the world.

64946.1

2. Briggs has a plant in Auburn, Alabama. There are three (3) general areas in the Auburn plant: (1) Iron Machining, (2) Aluminum Machining and (3) Assembly.

3. Beginning in March of 2004, Robert Westphal was the Area Manager (*i.e.*, supervisor) over Iron Machining. There are two (2) primary areas in Iron Machining: (1) flywheels and (2) crankshafts. There were seven (7) coaches (also known as "Team Leaders") under Mr. Westphal's supervision: Elvis Tolbert, Mallory Covington (black) and Jason Barlow (white) were on the first shift; Michelle Presley (black), James Ashton (white)[1] and Chris Baker (white) were on the second shift; and Tom Hawkins (white) was on the third shift.

4. In early December 2004, Mr. Westphal recommended the termination of Mr. Tolbert. For several months, Mr. Westphal had been telling me that Mr. Tolbert's performance was suffering and needed to improve. In recommending Mr. Tolbert's termination, Mr. Westphal noted several of the most recent issues that he had with Mr. Tolbert's performance. Specifically, Mr. Westphal explained that Mr. Tolbert had been repeatedly counseled about production goals for his area and improving his communication with management about production schedules, but he did not inform management that his area did not have any production on November 29, 2004.

---

[1] Shortly after Mr. Westphal became Area Manager, Jackie Osborne (white) replaced Mr. Ashton.

64946.1

Also, on November 29, 2004, Mr. Tolbert did not advise management that additional flywheels were needed to meet assembly line requirements. On November 30, 2004, Mr. Tolbert reported that his area produced only 50% of the flywheels required for satisfactory job performance. Then, on December 7, 2004, several unidentified baskets and parts were found in Mr. Tolbert's area. These items had not been included in Mr. Tolbert's report on the previous day.

5. On December 10, 2004, Mr. Westphal and I called Mr. Tolbert into a meeting, and we terminated Mr. Tolbert for poor job performance. I explained to Mr. Tolbert that we were also holding others responsible for the problems in his area. Mr. Tolbert did not dispute the reason for his termination or attempt to offer any explanations for his performance.

6. Mr. Tolbert was terminated for poor job performance, not his race. Between February 25, 2003 and March 15, 2005, three (3) white supervisors were also terminated for poor job performance, including Kevin Fluharty who was the engineer that provided support for Mr. Tolbert's area.

7. After his termination, Mr. Tolbert was not replaced.

8. Roger Milby (white) was the Manufacturing Specialist in Iron Machining, and he began working for Briggs in 1985. At some point, Mr. Milby left the company and decided to come back. He returned as a Specialist and resource for all three (3) shifts in Iron Machining; he was responsible for training

64946.1

the employees on repairing and maintaining equipment, as well as the iron machining process. Mr. Milby's position was a grade higher than that of the coaches.

9. Prior to Mr. Tolbert's termination, Mr. Covington had begun performing some of Mr. Tolbert's duties. So, after Mr. Tolbert's termination, Mr. Milby assumed Mr. Tolbert's remaining duties, in addition to continuing his support of all of the shifts. Mr. Milby was not promoted after Mr. Tolbert's termination. Furthermore, to my knowledge, Mr. Tolbert was not being considered for a promotion, and no one in management had promised Mr. Tolbert that he was being considered for a promotion.

10. During this litigation, Mr. Tolbert has complained about other ways in which he believes that he was discriminated against while employed at Briggs. In accordance with its Business Integrity Policy, Briggs is committed to conducting business in full compliance with the law and without regard to race, color, religion, sex, age, national origin, disability, veteran status or other protected classification. As part of Briggs' Integrity Policy, employees are given an 800 number to which an employee can call and make complaints, if that employee is not comfortable making such complaints to someone at the plant. During new hire orientation, employees are given a copy of Briggs' Business Integrity Policy, which contains its Equal Employment Opportunity and Prohibition Against Harassment policies,

64946.1

and thoroughly trained on the same. Additionally, Briggs displays its Equal Employment Opportunity poster in its break rooms. Finally, all of Briggs' supervisory employees receive annual EEO compliance training as well as Briggs' Integrity Policy. Mr. Tolbert never made a complaint of discrimination during his employment with Briggs.

11. Mr. Tolbert alleges that he was not allowed to select his lead setups during "wrap up." I believe that Mr. Tolbert is referring to "ramp up," which is a period when production increases because of increased customer demand. All supervisors are given guidance and instruction on interviewing and selecting employees, and supervisors are allowed to have some input into the selection process. However, supervisors are not given complete discretion to select employees. Human Resources has the ultimate authority to select employees, and those employees are selected based on their qualifications.

12. To my knowledge, no Briggs' employee has discriminated against Mr. Tolbert because of his race.

13. Furthermore, I deny that I have ever discriminated against Mr. Tolbert because of his race.

64946.1

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 26th day of October, 2006.

_____
Tim Beasley

64946.1