## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **ELVIS TOLBERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **3:05cv1149-MHT** |
| | ) | |
| **BRIGGS AND STRATTON** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DECLARATION OF ROBERT WESTPHAL

My name is Robert Westphal. Beginning in March of 2004, I was the Area Manager over Iron Machining at Briggs & Stratton's Auburn, Alabama plant. I am aware of the lawsuit filed by Elvis Tolbert, and this Declaration is based on my personal knowledge.

1.    As Area Manager over Iron Machining, Elvis Tolbert was under my direct supervision.

2.    Shortly after becoming Mr. Tolbert's supervisor, I realized that his performance as a coach was unsatisfactory. For example, he was not an effective leader because he could not or refused to enforce Briggs' policies and procedures, and his hourly employees did not respect him.

3.    Mr. Tolbert's hourly employees were supposed to prepare machines for operation and repair and maintain the machines.  However, when machines went down, Mr. Tolbert did not require a quick response from his hourly employees.  Instead of mobilizing his employees, Mr. Tolbert often performed the work himself.

4.    I had hoped that Mr. Tolbert's performance would improve, so I allowed him to continue to serve as a coach.  However, Mr. Tolbert's continued lack of leadership and control caused production problems in his area.  For example, Mr. Tolbert's employees went on breaks early and returned late from these breaks.  At the time, the demand for flywheels was very high.  Since the flywheel area was the slowest operation and required the most initiative and control, the employees' prolonged downtime caused a decrease in production.

5.    Toward 2004, sales and production schedules required Iron Machining to improve its quality and production.  Although Harold Smith (white), Plant Manager, and I had meetings about production goals, unidentified baskets and unidentified parts with my coaches, Mr. Tolbert failed to improve in these areas.  Furthermore, I specifically counseled Mr. Tolbert and his employees about failing to meet production goals and their need to improve their performance.  However, there was still no improvement.

6.      In fact, in an effort to assist Mr. Tolbert, I took the responsibility for Model 20 flywheels away from Mr. Tolbert and gave it to another coach, Mallory Covington (black).

7.      During the first week of December of 2004, I asked Mr. Tolbert to make a list of all observed deficiencies and required corrections in his assigned work area.  In response, he handwrote a list of 127 deficiencies in his area of responsibility.  I had previously asked Mr. Tolbert to correct these items.

8.      In early December 2004, I recommended the termination of Mr. Tolbert.  In recommending his termination, I noted several of the most recent issues that I had with Mr. Tolbert's performance.

9.      To my knowledge, no Briggs' employee has discriminated against Mr. Tolbert because of his race.

10.     Furthermore, I deny that I have ever discriminated against Mr. Tolbert because of his race.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 30 day of October, 2006.

_____
Robert Westphal