# EXHIBIT E

HAROLD SMITH -- 9/19/06

**ORIGINAL**

1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2            FOR THE MIDDLE DISTRICT OF ALABAMA
 3                     NORTHERN DIVISION
 4
 5   ELVIS TOLBERT,
 6        Plaintiff,
 7   vs.                           CIVIL ACTION NO.
 8                                 3:05cv1149-T
 9   BRIGGS AND STRATTON
10   CORPORATION, et al.,
11        Defendants.
12
13            *    *    *    *    *    *
14            DEPOSITION OF HAROLD SMITH,
15   taken pursuant to notice and stipulation on
16   behalf of the Plaintiff, in the offices of
17   Juraldine Battle-Hodge, Esquire, 207
18   Montgomery Street, Suite 215, Montgomery,
19   Alabama, before Vila Davenport, Judicial
20   Reporter and Notary Public in and for the
21   State of Alabama at Large, on Tuesday,
22   September 19, 2004, commencing at
23   approximately 9:15 a.m.
```

VILA DAVENPORT -- FREELANCE JUDICIAL REPORTER -- 334.324.1127

HAROLD SMITH -- 9/19/06

2

```
 1                    APPEARANCES
 2
 3   FOR THE PLAINTIFF:
 4           JURALDINE BATTLE-HODGE, ESQUIRE
 5           Attorney at Law
 6           207 Montgomery Street, Suite 215
 7           Montgomery, Alabama  36104
 8   FOR THE DEFENDANT BRIGGS AND STRATTON
 9   CORPORATION:
10           THOMAS A. DAVIS, ESQUIRE
11           Constangy, Brooks, and Smith, LLC
12           One Federal Place, Suite 900
13           1819 Fifth Avenue North
14           Birmingham, Alabama  35203
15   ALSO PRESENT:
16           Elvis Tolbert
17           Tim Beasley
18
19
20
21
22
23
```

STIPULATIONS

It is hereby stipulated and agreed by and between counsel representing the parties that the deposition of **HAROLD SMITH** is taken pursuant to notice and stipulation on behalf of the Plaintiff; that all formalities with respect to procedural requirements are waived; that said deposition may be taken before Vila Davenport, Judicial Reporter and Notary Public in and for the State of Alabama at Large, without the formality of a commission; that objections to questions, other than objections as to the form of the questions, need not be made at this time but may be reserved for a ruling at such time as the deposition may be offered in evidence or used for any other purpose as provided for by the Civil Rules of Procedure for the State of Alabama.

It is further stipulated and agreed by and between counsel representing the parties in this case that the filing of

```
 1   the deposition of HAROLD SMITH is hereby
 2   waived and that said deposition may be
 3   introduced at the trial of this case or
 4   used in any other manner by either party
 5   hereto provided for by the Statute,
 6   regardless of the waiving of the filing of
 7   same.
 8              It is further stipulated and
 9   agreed by and between the parties hereto
10   and the witness that the signature of the
11   witness to this deposition is hereby
12   waived.
13              *    *    *    *    *    *
14                        INDEX
15   EXAMINATION:                              PAGE
16   By Ms. Battle-Hodge...................     6
17   By Mr. Davis..........................    98
18
19   EXHIBITS:                                 PAGE
20   PX-1       EEOC Summary of Charge,         21
                dated 8/8/05.
21
22
23              *    *    *    *    *    *
```

VILA DAVENPORT -- FREELANCE JUDICIAL REPORTER -- 334.324.1127

|    |    |    |
|----|----|----|
| 1  |    | bit now.  Are you familiar with Mr. Tolbert |
| 2  |    | being counseled at all? |
| 3  | A. | I can only say what I am familiar with. |
| 4  | Q. | Yes, sir. |
| 5  | A. | I counseled all three coaches. |
| 6  | Q. | Okay.  All three, who are you talking |
| 7  |    | about? |
| 8  | A. | The coaches on all three shifts. |
| 9  | Q. | Oh, you do coach all three, okay. |
| 10 | A. | Well, no.  I didn't say that.  I said I |
| 11 |    | counseled with all three during this |
| 12 |    | particular time if my memory -- |
| 13 | Q. | Yes, sir.  Okay. |
| 14 | A. | Elvis being one and then we had had some |
| 15 |    | performance issues -- |
| 16 | Q. | Okay. |
| 17 | A. | -- and we had had some safety critical |
| 18 |    | issues -- |
| 19 | Q. | Okay. |
| 20 | A. | -- that had come up, and I told each of the |
| 21 |    | coaches that it was unacceptable for them |
| 22 |    | to allow parts to go to our assembly line |
| 23 |    | that could possibly self-destruct and put |

HAROLD SMITH -- 9/19/06

```
 1         What --
 2    A.   They go on the top of an engine.
 3    Q.   Okay.
 4    A.   On the end of the crank shaft.
 5    Q.   Oh, flywheel.  I've heard of that.  Well,
 6         okay.  So Mr. Tolbert was the sole coach
 7         for fly wheels?
 8    A.   First shift.
 9    Q.   Okay.  There were three shifts -- all three
10         shifts did flywheel, okay.  Now, there were
11         problems with -- were there problems with
12         Mr. Tolbert's producing the flywheel?
13    A.   As reported by the area manager.
14    Q.   Okay.  And were there problems on any other
15         shift?
16    A.   There were some problems.
17    Q.   Okay.  There were some?  Were those
18         reported?
19    A.   I can't recollect all of them, but
20         certainly there were.  I'm sure there were
21         as in any manufacturing.
22    Q.   Okay.  Now, there were -- he was on first
23         shift; is that correct?
```

|  |  |  |
|---|---|---|
| 1 |  | what was reported to you. |
| 2 | A. | There were several -- |
| 3 | Q. | No.  Okay.  Is that -- was that a problem? |
| 4 | A. | That was one of them. |
| 5 | Q. | Okay.  And that -- is that the thing that |
| 6 |  | you counseled Mr. Tolbert about? |
| 7 | A. | Actually, I observed that myself -- |
| 8 | Q. | Okay. |
| 9 | A. | -- and had been told by the area manager |
| 10 |  | that that was an issue. |
| 11 | Q. | Okay.  What else did you counsel |
| 12 |  | Mr. Tolbert about, if anything? |
| 13 | A. | The only other thing that I can say is when |
| 14 |  | the -- we had the responsibility to meet |
| 15 |  | our production goal with quality parts, |
| 16 |  | and, of course, I told him and all three |
| 17 |  | shifts. |
| 18 | Q. | Right.  You counseled all three shifts |
| 19 |  | about it, but did you -- was it directly -- |
| 20 | A. | All three shift coaches. |
| 21 | Q. | Right.  All three shift coaches, but did |
| 22 |  | you counsel Mr. Tolbert specifically about |
| 23 |  | it that it was just on his shift or |

HAROLD SMITH -- 9/19/06

45

| | | |
|---|---|---|
| 1 | | anything like that, or was it discussed as |
| 2 | | a group, as the company? |
| 3 | A. | No.  That's about the extent of that, yeah. |
| 4 | Q. | What?  What?  About what? |
| 5 | A. | What I just told you. |
| 6 | Q. | What was that? |
| 7 | A. | That I counseled not only him -- |
| 8 | Q. | Right. |
| 9 | A. | -- but the other coaches that these were |
| 10 | | safety critical parts, and we had to meet |
| 11 | | production goal and that we couldn't allow |
| 12 | | any unidentified parts to escape to the |
| 13 | | assembly line.  It could be a real safety |
| 14 | | issue. |
| 15 | Q. | Okay.  Now, is that what ultimately caused |
| 16 | | Mr. Tolbert's termination? |
| 17 | A. | Ultimately what caused it was the list that |
| 18 | | was generated by Rob Westfall. |
| 19 | Q. | Okay.  I know you been wanting to talk |
| 20 | | about that.  Why don't you talk about it? |
| 21 | A. | Well, no, he -- and I can tell y'all how he |
| 22 | | came to me and said he was frustrated on a |
| 23 | | number of issues that he had discussed with |

HAROLD SMITH -- 9/19/06

| | | |
|---|---|---|
| 1 | | Elvis and that he was at his wit's end. |
| 2 | Q. | When you say he, you mean -- |
| 3 | A. | Robert Westfall. |
| 4 | Q. | Okay. |
| 5 | A. | And I asked him had he counseled Elvis, and |
| 6 | | he said numerous times. |
| 7 | Q. | Okay. |
| 8 | A. | And I guess you attached the letter that |
| 9 | | was sent to me, a copy to Tim Beasley.  I |
| 10 | | asked him, I said, well, you are going to |
| 11 | | have to be more specific than that to make |
| 12 | | absolutely certain that the man understands |
| 13 | | the issue better.  He sent me a letter and |
| 14 | | copied Tim Beasley and at which time I |
| 15 | | asked him to make sure that we -- Tim is my |
| 16 | | human resource manager. |
| 17 | Q. | Uh-huh. |
| 18 | A. | To make sure everything is kosher and |
| 19 | | confer with whomever he had to before he |
| 20 | | was actually terminated, and that's the |
| 21 | | chain of events. |
| 22 | Q. | Okay.  So you were considering termination |
| 23 | | even before you received the list? |

```
 1   Q.   Right.  Right.  So during the -- and I know
 2        I'm not saying that you said that he was in
 3        this position for a year, but for however
 4        long Mr. Tolbert was in the position he
 5        had, did any of his performances reflect
 6        the problems he was having?
 7   A.   The only thing that I can testify to is
 8        what I have already told you.
 9   Q.   Which is?
10   A.   The area manager saying that Mr. Tolbert
11        had unsatisfactory performance as a coach.
12   Q.   Okay.  So verbally, as far as you know --
13   A.   Well, I think there were some written
14        things too?
15   Q.   Well, what were they?
16   A.   Well, the letter I got was one.
17   Q.   Oh, that -- when that -- where you
18        terminated him?
19   A.   Yes.
20   Q.   Okay.  So the first written thing you
21        received, you terminated him?
22             MR. DAVIS:  Objection.
23   A.   I didn't.
```

```
 1   Q.   Well, the company.  He was terminated?
 2   A.   I wouldn't know that.  I just said to my
 3        knowledge, the first written thing that I
 4        had seen --
 5   Q.   Okay.
 6   A.   -- there could have been others.
 7   Q.   Okay.  After you received the written
 8        response or -- from Mr. Westfall, did you
 9        speak with Mr. Tolbert after that, did you
10        ask him what was going on?
11   A.   No, I didn't.  I normally would not do
12        that.
13   Q.   Okay.
14   A.   Because I'm -- generally speaking, if
15        someone takes issue, I try to stay out of
16        the process so they can come and appeal or
17        complain to me.
18   Q.   Okay.
19   A.   And the employees have done that.
20   Q.   Okay.  But if a --
21   A.   It's very difficult for me to be in the
22        process yet be somewhat unbiased if an
23        employee has a complaint after they've been
```

```
 1        well, but it was running.
 2   Q.   Would it be correct to say that there were
 3        some problems on that shift already?
 4   A.   Yeah, there were problems.
 5   Q.   What kind of problems?
 6   A.   Some quality and production issues.
 7   Q.   Okay.  And when Mr. Tolbert took that
 8        position, those problems were already
 9        there.  So are you saying that -- so the
10        problems that were there, they weren't
11        created by Mr. Tolbert, the shift was
12        already a problem; is that correct?
13   A.   We expect our leaders to improve the
14        situation.
15   Q.   Okay.
16   A.   And that's one of the performance factors.
17   Q.   Okay.  So he came into a pretty bad
18        situation and --
19   A.   I didn't say pretty bad.
20   Q.   Well --
21   A.   There were issues.
22   Q.   With some issues?
23   A.   Issues.  And we expect our leaders to
```

| | | |
|---|---|---|
| 1 | | you came? |
| 2 | A. | No.  He had left the company and came back |
| 3 | | with the company -- in total -- |
| 4 | Q. | Okay.  I'm just trying to be clear. |
| 5 | | Mr. Milby worked for Briggs before you |
| 6 | | came.  Okay.  Then -- but when he came |
| 7 | | back, it was after you had been here for a |
| 8 | | while? |
| 9 | A. | Uh-huh. |
| 10 | Q. | Okay.  And when he came back, he was -- is |
| 11 | | that when he was hired in as a grade 11? |
| 12 | A. | Yes. |
| 13 | Q. | Okay.  Do you recall when he came back? |
| 14 | A. | No.  Not -- |
| 15 | | MR. DAVIS:  Just testify about |
| 16 | | what you know if you know. |
| 17 | A. | No, I mean, it's of record.  I don't |
| 18 | | remember. |
| 19 | Q. | Okay.  Was he there before Mr. Tolbert was |
| 20 | | terminated? |
| 21 | A. | Yes. |
| 22 | Q. | Okay.  What position was he working in |
| 23 | | before Mr. Tolbert was terminated? |

| | | |
|---|---|---|
| 1 | Q. | So the coaches report to him? |
| 2 | A. | They do. |
| 3 | Q. | On all the shifts? |
| 4 | A. | Along with the area manager. |
| 5 | Q. | Did they do that before Mr. Tolbert left? |
| 6 | A. | I can't remember. |
| 7 | Q. | Do you remember or recall if Mr. Tolbert |
| 8 | | reported to Mr. Milby? |
| 9 | A. | I don't think so. |
| 10 | Q. | Okay. So immediately after Mr. Tolbert was |
| 11 | | terminated -- |
| 12 | A. | Uh-huh. |
| 13 | Q. | -- tell me what happened with his -- at |
| 14 | | that point, what happened with the position |
| 15 | | he held? |
| 16 | A. | As far as I know, we didn't fill the |
| 17 | | position that he held. |
| 18 | Q. | Uh-huh. |
| 19 | A. | In addition to his current duties, Milby |
| 20 | | assumed those on first shift. |
| 21 | Q. | Okay. Are you aware that Mr. Milby before |
| 22 | | he -- was he looking for other employment |
| 23 | | before he was placed into the position -- |