**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **ELVIS TOLBERT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.:** |
| ) | **3:05cv1149-MHT** |
| ) | |
| **BRIGGS AND STRATTON** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on February 2, 2007, wherein the following proceedings were held and actions taken:

1. <u>PARTIES AND TRIAL COUNSEL</u>: The parties before the Court are correctly named as set out below, and the designated trial counsel for the parties are as set out below:

| <u>PARTIES</u> | <u>TRIAL COUNSEL</u> |
|---|---|
| Plaintiff: | |
| Elvis Tolbert | Juraldine Battle-Hodge |
| | Law Offices of Juraldine Battle-Hodge, P.C. |
| | 207 Montgomery Street |
| | Suite 215 |
| | Montgomery, Alabama 36104 |
| | |
| Defendant: | |
| Briggs and Stratton Corporation | Thomas A. Davis |
| | Tamula R. Yelling |

>Constangy, Brooks
>& Smith, LLC
>One Federal Place, Suite 900
>1819 Fifth Avenue North
>Birmingham, Alabama 35203

<u>COUNSEL APPEARING AT PRETRIAL HEARING</u>:

Appearing at the conference were:     Same as trial counsel.

2.     <u>JURISDICTION AND VENUE</u>: Subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1343. Personal jurisdiction and venue are not contested.

3.     <u>PLEADINGS</u>:     The following pleadings and amendments were allowed: Complaint and Answer.

4.     <u>CONTENTIONS OF THE PARTIES</u>:

(a)     The plaintiff(s)

(1)     <u>Statement of the Plaintiff</u>.

Plaintiff is a 42 year old black male. Plaintiff began working for Briggs & Stratton (Briggs) as a temporary operator on or about 1996. In May of 1996, Plaintiff was hired as a permanent operator. In November 1996, Plaintiff was promoted to supervisor.

On or about February 2002, Plaintiff was called to active duty. Plaintiff returned to Briggs in July 2003. At which time, Plaintiff was assigned to the machinery department (second shift). October 2003, Plaintiff returned to the first shift machinery department.

In December 2004, Plaintiff was terminated. The reason given to Plaintiff was poor performance. However, the real reason that Plaintiff was terminated was race discrimination. Plaintiff was in line for a promotion to senior supervisor. However, Plaintiff believes that Briggs had "hand picked" the individual it wanted for the position, Roger Milby, white male. Milby was similarly situated to Plaintiff. Plaintiff

was wrongfully terminated based on his race, black. Plaintiff is due to prevail as to race discrimination, failure to promote and intentional infliction of emotional distress.

Plaintiff filed his EEOC charge within the applicable 180 day statute.

(2)   Plaintiff's Discharge.

Plaintiff's discharge was based on his race. Plaintiff was the coach for the first shift fly wheel department. Defendant contends that it counseled Plaintiff on several occasions about his poor performance. Yet, Harold Smith, plant manager testifies in his deposition that though he has counseled Plaintiff on three occasions about performance, yet, on all three occasions, he counseled all three coaches at the same time. Harold Smith and Plaintiff testified that Plaintiff was not counseled individually. Mr. Smith admitted that there were problems on all three shifts.

Plaintiff testified in his deposition that the reason he was given for his termination was "poor performance." Plaintiff was terminated once a letter of complaint was generated by his area manager, Wesphal. The list was generated on the direction of the plant manager, Harold Smith. Once Mr. Wesphal complained to the plant manager that he wished to terminate Plaintiff, Mr. Smith simply advised Mr. Wesphal to put his reasons in writing. Once the reasons were put in writing, the Plaintiff was terminated. Upper management did not investigation into Wesphal's allegations. Defendant simply, "rubberstamped" Mr. Wesphal's recommendation.

It is ironic that no other shift coaches were terminated for poor performance, when it was clear that all three shifts were disciplined for production and safety concerns.

(3)   Unidentified Parts/ Fly Wheels.

Unidentified parts were not only found on Plaintiff's shift. Mr. Smith testified that unidentified parts could have been left on any shift.

When Plaintiff was assigned to the Fly Wheel duties on the first shift, Plaintiff immediately voiced concerns with the deficiencies on the first shift. Plaintiff made his concerns known to Mr. Wesphal. Mr. Wesphal requested that Plaintiff make him a list of the deficiencies. Though Plaintiff made a list of deficiencies, nothing was done to assist Plaintiff; instead, Mr. Wesphal used the list against Plaintiff. The 127

deficiencies in Plaintiff's list were created at the inception of the flywheel department. Plaintiff was assigned to this department around September or October of 2003. Plaintiff was the one to create procedure to identify and control a situation that was already out of hand before Plaintiff was assigned to fly wheels. Defendants state that the production of fly wheels is a three shift operation. Therefore, it is curious that this problem was only a problem to Plaintiff, since all three shifts were a part of the process. The shift that Plaintiff occupied was the shift that management wanted to move Mr. Milby into.

### (4) Plaintiff Has Established a Prima Facie Case for Race Discrimination.

Plaintiff is a member of the protected groups, as he is black. Plaintiff was subjected to a disparate employment treatment. Plaintiff was terminated. Plaintiff was treated less favorably when he was terminated. Like Plaintiff, Mr. Milby was responsible for training and repairing, yet he wasn't held responsible for any of the alleged deficiencies on the first shift. In fact, Milby was promoted, whereas Plaintiff was terminated for the alleged deficiencies. Plaintiff's termination was discriminatory. The termination was as a result of making room for a white male.

Roger Milby is similarly situated to Plaintiff, because Milby and Plaintiff worked in the same job and their duties and responsibilities were the same. Mr. Milby replaced Plaintiff. They both were supervised by Wesphal and they both worked for the Defendant during the time of the Complaint.

Plaintiff was clearly qualified for the senior supervisor position, as he had worked in management for over 8 ½ years. The Defendant showed complete confidence in Plaintiff with the type of responsibility it entrusted to Plaintiff. There were no complaints against Plaintiff until the need to place Milby in Plaintiff's position arose. Plaintiff has been an employee with Briggs since 1996. Plaintiff has successfully made a prima facie case for discrimination.

### (5) The Defendant did not Present Legitimate Business Reasons for Its Discrimination Against Plaintiff.

The Defendant offered what it has labeled as legitimate business reasons for the disciplinary action it took against Plaintiff when it terminated Plaintiff. However, the reasons given to Plaintiff were pretextual.

At the time that Plaintiff was terminated, Defendants state that they did not replace Plaintiff with Mr. Milby. Defendants state that Plaintiff's duties were also shared with Mr. Covington. Mr. Covington (black male) did not take on a portion of Plaintiff's responsibilities. At the time that Plaintiff was terminated, Covington was assigned to Model 20 flywheels. Additionally, Defendants also provide that they also terminated a white employee at the time they terminated Plaintiff. Kelvin Fluharty, (white male) was terminated long before Plaintiff was terminated. Fluharty had been reassigned to a different department. After Fluharty was reassigned, he was terminated. He was not terminated from the shift and department that Plaintiff was terminated from. The reasons that Defendant brings forth for terminating Plaintiff are merely pretext for the real reason it terminated Plaintiff, race discrimination.

(6) <u>Plaintiff has successfully made a claim for failure to Promote</u>.

In December 2004, Plaintiff was terminated. The reason given to Plaintiff was poor performance. Plaintiff was in line for a promotion to senior supervisor. However, Plaintiff believes that Briggs had "hand picked" the individual it wanted for the position, Roger Milby, white male. Milby was similarly situated to Plaintiff. Plaintiff was subjected to disparate treatment, as he was fired. Whereas, even though Milby was responsible for training and repairing on this same shift, he was not terminated or even disciplined. Milby in fact replaced Plaintiff and was ultimately promoted to senior supervisor.

(7) <u>Intentional Infliction of Emotional Distress</u>.

Plaintiff contends that he is entitled to prevail on intentional infliction of emotional distress due to the fact that Defendant's treatment was outrageous and went beyond the decency treatment that an employee is due.

(8) <u>Conclusion</u>.

Plaintiff is due a judgment declaring that Defendants violated Title VII of the Civil Rights Act of 1964; a judgment declaring Defendants liable for intentional

infliction of emotional distress; all backpay and fringe benefits from the date of his wrongful denial of said promotion with interest; attorney's fees; costs; prejudgment interest and compensatory damages.

   (b) The defendant(s)

Defendant denies all of plaintiff's claims and further denies that it discriminated against plaintiff on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended. Specifically, defendant denies that it discriminated against plaintiff in promotions, compensation, assignments, the terms and conditions of his employment or discharge. Defendant further denies that it intentionally inflicted emotional distress upon plaintiff. In fact, plaintiff failed to argue the merits of his claims of discriminatory compensation, assignments and terms and conditions of employment and absolutely failed to oppose defendant's motion for summary judgment on plaintiff's claim of intentional infliction of emotional distress. Therefore, those claims are due to be dismissed.

   (1) <u>Discriminatory Discharge Claim</u>.

Defendant maintains that plaintiff was discharged for poor performance after multiple warnings. This is a legitimate, nondiscriminatory reason. Plaintiff's race was not a factor in his termination, and plaintiff cannot demonstrate that his race played a role in the decision to discharge him.

Robert Westphal (white) was the Area Manager over Iron Machining. There were seven (7) coaches under Mr. Westphal's direct supervision: plaintiff, Mallory Covington (black) and Jason Barlow (white) were on the first shift; Michelle Presley (black), James Ashton (white) and Chris Baker (white) were on the second shift; and (7) Tom Hawkins (white) was on the third shift.

Roger Milby (white) was the Manufacturing Specialist in Iron Machining. Mr. Milby began working for defendant in 1985, but later left the company. He subsequently returned to defendant as a Specialist and resource for all three (3) shifts in Iron Machining; he was responsible for training the employees on repairing and maintaining equipment, as well as the iron machining process. Mr. Milby's position was a grade higher than that of the coaches.

While under Mr. Westphal's supervision, plaintiff was repeatedly counseled about his performance, but he failed to improve. In fact, when asked about deficiencies in his area, plaintiff wrote out 127 deficiencies that existed in his area. Mr. Westphal had previously asked plaintiff to correct these deficiencies. In an effort to assist plaintiff, Mr. Westphal even assigned a portion of plaintiff's duties to Mr. Covington.

When plaintiff was terminated, his remaining duties were assumed by Mr. Milby. Mr. Milby took over plaintiff's remaining duties, while continuing to serve in his role as a resource for all three (3) shifts in Iron Machining.

White employees were also terminated for poor job performance. For example, Kevin Fluharty, a white engineer was terminated for poor job performance. None of the other black coaches in plaintiff's area were terminated for problems in the area.

(2) <u>Discriminatory Promotion Claim</u>.

Defendant maintains that Mr. Milby was not promoted after plaintiff's termination. Rather, Mr. Milby's position was already a grade higher than plaintiff when he was hired and he was acting as support for all of the coaches in Iron Machining, so he assumed some of plaintiff's duties and continued performing his own. Further, plaintiff was not being considered for a promotion, and he had not been promised a promotion by management. Defendant denies that plaintiff's race was a factor in any of defendant's decisions.

(3) <u>Discriminatory Compensation, Assignments and Terms And Conditions Claims</u>.

Defendant maintains that plaintiff's claims arising between 1996 and mid-2003 fail as a matter of law. Pursuant to Title VII, plaintiff was obligated to file an EEOC charge within 180 days of learning of any alleged disparate treatment. Based on plaintiff's deposition testimony, he believed that he was being treated differently from other employees during the period between 1996 and mid-2003. However, plaintiff did not file a charge until March 25, 2005, which was well outside of the 180 day period.

Defendant further asserts that, although plaintiff complains about differential treatment in selecting his lead setups, selecting his furniture, disciplining his hourly employees, receiving additional training, receiving pay raises, an incident concerning an e-mail message and an incident with John Frantz, a white supervisor, plaintiff did not suffer an adverse employment action as a result of any of these events. There is also no evidence that any white employees were treated more favorably in any of these areas. Defendant denies that plaintiff's race was a factor in any of defendant's decisions.

(4)   Intentional Infliction Of Emotional Distress Claim.

Defendant denies that it subjected plaintiff to conduct that was outrageous or went beyond the bounds of human decency. Further, defendant had legitimate, nondiscriminatory reasons for any employment action taken regarding plaintiff. Even if defendant had no legitimate, nondiscriminatory reasons for its actions regarding plaintiff, defendant's conduct did not go beyond the bounds of human decency.

(5)   Mitigation of Damages.

Defendant submits plaintiff is not entitled to back pay (or front pay) damages as he has not mitigated his damages by seeking other employment.

(6)   Miscellaneous.

Defendant incorporates by reference all defenses asserted in its Answer to plaintiff's Complaint.

5.   STIPULATIONS BY AND BETWEEN THE PARTIES:

Defendant has a plant in Auburn, Alabama. There are three (3) general areas in the Auburn plant: (1) Iron Machining, (2) Aluminum Machining and (3) Assembly. Each of these areas is supervised by an Area Manager.

Beginning in March of 2004, Robert Westphal (white) was the Area Manager over Iron Machining.

In November and December of 2004, Mr. Westphal and Harold Smith (white), Plant Manager, had meetings with the coaches about production goals and eliminating the existence of unidentified baskets and unidentified parts in the work areas.

During the first week of December of 2004, Mr. Westphal asked plaintiff to write a list of items that needed to be improved in his area. In response, plaintiff wrote a list, itemizing 127 deficiencies that he observed.

On December 10, 2004, plaintiff was called into a meeting with Mr. Westphal and Tim Beasley (white), Human Resource Manager, wherein plaintiff was told that he was being terminated for poor job performance.

On March 25, 2005, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging race discrimination. Plaintiff filed the Charge based on his beliefs that he was replaced by Mr. Milby, who was allegedly later promoted, and plaintiff's disagreement with the contention that his performance was poor. The EEOC dismissed plaintiff's Charge, finding no evidence of discrimination.

On December 6, 2005, plaintiff filed a federal lawsuit alleging that, in violation of Title VII of the Civil Rights Act of 1964, as amended, he was terminated because of his race.

**It is ORDERED that:**

**(1) The jury selection and trial of this cause, which is to last two (2) days, are set for March 12, 2007, at 10:00 a.m., at the federal courthouse in Opelika, Alabama.**

**(2) The parties are to file their pre-trial briefs by February 26, 2007;**

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the list of his or her exhibits;

(4) At least three days before trial, counsel are to contact the courtroom deputy clerk about the procedures for pre-marking all trial exhibits;

(5) Each party shall have available a sufficient number of copies of each photostatically reproducible exhibit for each of the jurors, opposing counsel, the courtroom deputy clerk, the law clerk, and the judge; and

(6) All understandings, agreements, and stipulations contained in this pretrial order shall be binding on all parties unless an objection is noted and filed with the court within seven (7) days from the date of this order.

DONE, this the 7th day of February, 2007.

                                            /s/ Myron H. Thompson
                                     UNITED STATES DISTRICT JUDGE